UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERYL CUMMINGS, | : | |
| Plaintiff, | : | |
| | : | No. 5:25-cv-4874 |
| v. | : | |
| | : | |
| CUSTOM WOODWORKING CABINETRY AND | : | |
| DESIGN, LLC; J. HERBERT FISHER, JR.; | : | |
| CWCD HOLDINGS, LLC, | : | |
| Defendants. | : | |

**O P I N I O N**
**Motion to Dismiss, ECF No. 18 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                                    **June 9, 2026**
**United States District Judge**

## I.    INTRODUCTION

Plaintiff Cheryl Cummings filed an Amended Complaint alleging that Defendants, Custom Woodworking Cabinetry and Design, LLC, CWCD Holdings, LLC, and J. Herbert Fisher, Jr., discriminated against, disparately treated, and retaliated against her on the basis of her gender, leading to her constructive discharge. Now pending is Defendants' Motion to Dismiss the gender discrimination, hostile work environment, and retaliation claims in Counts One, Two, and Three of the Amended Complaint for failure to state a claim. For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part. Count Two and the retaliation allegations in Count Three of the Amended Complaint are dismissed with prejudice.

## II.    BACKGROUND

### A.  Factual Allegations

Cummings was a salesperson for Defendants Custom Woodworking Cabinetry and Design, LLC, CWCD Holdings, LLC, and J. Herbert Fisher, Jr., from January 2016 to October 11, 2023. *See* Am. Compl. ¶ 12, ECF No. 17. Levi Stoltzfus hired Cummings. *See id.* ¶ 13. Cummings was the only female salesperson and was supervised by all male employees. *See id.* ¶ 14. Levi Stoltzfus sold his ownership of Defendants Custom Woodworking and CWCD Holdings "to, among others, Defendant [Fisher], on April 23, 2019." *Id.* ¶ 15. "[Cummings'] office, peers, and operations remained mostly the same after the sale; however, [Cummings] began to experience discrimination, disparate treatment, and other mistreatments as set forth below that/which continued and lasted up through [her] constructive discharge on October 11, 2023." *Id.* ¶ 16. Defendant Fisher was Cummings' supervisor after the sale. *See id.* ¶ 17.

After the sale, "Defendants['] employees made sexist[,] discriminatory comments to [Cummings] with regard to her work habits, lifestyle, and general conduct; which were unwelcome, discriminatory, and further color Defendants' other conduct." *Id.* ¶ 18. For example, a manager, Brad Yoder, said "women should not be doing construction" and Yoder and Defendant Fisher both called Cummings "too sensitive" and "stupid." *Id.* ¶ 19. Additionally, David Fisher, a painter working for Defendants, told Cummings "you are a girl and should just stay at home where you belong" and referred to another female employee, in front of Cummings, as "a fat queer woman." *Id.* ¶ 20.

Defendants paid Cummings on a commission basis, which was ten percent (10%) of all sales, and, absent commissions, Cummings "could make draws that would be paid back to Defendants out of future commission payments." *Id.* ¶ 41. Beginning in 2021, Cummings

received an additional eight percent (8%) commission rate on gross sales of the Century Cabinet product line. *See id.* ¶ 42. Cummings was entitled to reimbursement for "mileage, tolls, parking, and cell[]phone bills." *Id.* ¶ 43. "Salespersons were expected to be paid in the next biweekly pay period after submitting requests for payment[.]" *Id.* ¶ 44.

After the sale, Cummings' "commission payments were consistently delayed in relation to male salespersons, for months up to over half a year." *Id.* ¶ 22. She "learned through conversation with male salespersons, including Levi Stoltzfus and Brad Yoder (who was also a Manager), that her payments were being delayed as those individuals stated they were paid the very next pay period (biweekly)." *Id.*; *see also* ECF No. 17-1. Cummings' "commission payments were also unilaterally and discriminatorily reduced in amount, against [Cummings] specifically, under the guise of 'claw back' of money when errors were made or other customer friendly actions taken, for which [Cummings] had little or no input, and for which other male salespersons never had commission payments reduced for similar reasons." Am. Compl. ¶ 23. Additionally, Defendants "denied and refused" to pay Cummings her expense reimbursements, while not doing so "to similarly situated male salespersons." *Id.* ¶ 24. Defendants also "offered health insurance and/or health insurance reimbursement to male salespersons and employees, but not [Cummings.]" *Id.* ¶ 25. Defendants also allegedly offered vacation and sick time to male employees, including Yoder, but not to Cummings. *See id.* ¶ 26. Cummings requested vacation and sick time, but Defendants denied her request and told her that others did not receive such time. *See id.*

Additionally, Cummings alleges that Defendants' employees mistreated her "customers, clientele, assistants, contractors, and affiliates in an effort to undermine [her] and cause [her] to quit[.]" *Id.* ¶ 27. "For example, after having made mistakes and errors on customer and client

Michael D. Fried's order, Defendants made comments to Mr. Fried about [Cummings] to undermine his confidence in her, specifically Brad Yoder's statement [that] 'women should not be doing construction.'" *Id.* ¶ 28. Also, Defendants made other comments to Fried, including that Cummings was "too sick" and "cannot handle the job." *Id.*

Cummings complained, both verbally and in writing, to her superiors about the alleged treatment. *See id.* ¶ 29. Specifically, on October 4, 2023, she emailed Brad Yoder, Defendant Fisher, "and others that Defendants were bullying and discriminating against her, and that labor laws exist to protect her from the discrimination and harassment." *Id.* ¶ 30. "[T]here were no investigation[s] or actions taken in response to" Cummings' complaint. *Id.* ¶ 31. A week later, on October 11, 2023, Cummings emailed Brad Yoder, Defendant Fisher, and others[1] to stop the "constant harassment and discrimination over what I have earned and should be paid. . . ." *Id.* ¶ 32. Cummings referred to herself as "the woman who brought in 80[%] – 90% of the sales, worked the most hours, without overtime," and "loved her job." *Id.* Cummings then announced her intention to resign from Defendants' employ. *See id.* ¶ 33. Defendants did not investigate Cummings' complaints. *See id.* ¶ 34.

Yoder responded to Cummings on October 11, 2023, saying that he sought to maintain "honesty and integrity and was never [his] intention to discriminate or bully by doing an accurate report." *Id.* ¶ 35. Yoder added that it was "not his responsibility to approve reports, the owners [including Defendant Fisher] do," and "defended the late payments by claiming [Cummings] was delayed in submitting reports." *Id.* ¶¶ 36–37. Cummings alleges that "the constant disparate and discriminatory mistreatment, late and non-payment of wages, denial of expenses and benefits,

---

[1]    It is unclear who the others in question are.

refusal to investigate complaints, comments, conduct, and mistreatment of clients made there no other reasonable alternative[]" but for her to resign. *Id.* ¶ 39.

Cummings calculates her total unpaid expenses as $101,447.87.[2] *See id.* ¶ 46; *see also* ECF No. 17-3. She calculates her total unpaid commissions as $44,762.13. *See* Am. Compl. ¶ 47; *see also* ECF No. 17-2.

Cummings negotiated with Defendants about the unpaid commissions and expenses through and after October 2023. *See* Am. Compl. ¶ 48. On November 2, 2023, Cummings filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and Pennsylvania Human Relations Commission (PHRC) and received a Notice of Right to Sue on June 6, 2025. *See id.* ¶ 11.

Cummings brings five counts in her Amended Complaint: Count One is for Hostile Work Environment, Discrimination, and Disparate Treatment under Title VII against Defendants Custom and CWCD Holdings. *See id.* ¶¶ 51–60. Count Two is for Retaliation under Title VII against Defendants Custom and CWCD Holdings. *See* ¶¶ 61–68. Count Three is for Harassment, Discrimination, and Retaliation under the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951-63, against all Defendants. *See id.* ¶¶ 69–76. Count Four is for the Non-payment of wages under the Pennsylvania Wage Payment & Collection Law, 43 P.S. § 260.1, against all

---

[2]     The Court notes that the "Exhibit B" reflects unpaid expenses, *see* ECF No. 17-2, and "Exhibit C" reflects unpaid commissions from April through December of 2023, *see* ECF No. 17-3. Although the Amended Complaint refers to "Exhibit B" as unpaid commissions totaling $101,447.87, and "Exhibit C" as unpaid expenses totaling $44,762.13, the Court interprets the exhibits before it to reflect $44,762.13 in unpaid *commissions* and $101,447.87 in unpaid *expenses*. The diagram in both exhibits reflects the same. *See* ECF Nos. 17-2, 17-3. To the extent Cummings alleges the reduction of her commissions included a "claw back," Am. Compl. ¶ 23, the amount ($65,943.56) is included in the "expenses" exhibit. *See* ECF No. 17-2.

Defendants. *See id.* ¶¶ 77–88. Count Five is for Breach of Contract and Unjust Enrichment against all Defendants. *See id.* ¶¶ 89–97.

### B. Procedural History

Cummings filed her Complaint on August 26, 2025. *See* Compl., ECF No. 1. On October 14, 2025, Defendants filed a Motion to Dismiss Counts One, Two, and Three. *See* ECF No. 8. The Court granted the Motion to Dismiss without prejudice on March 30, 2026. *See* ECF Nos. 15, 16.

Cummings filed an Amended Complaint on April 20, 2026. *See* Am. Compl., ECF No. 17. Defendants filed a Motion to Dismiss Counts One through Three (and requesting that the Court decline to exercise supplemental jurisdiction over Counts Four and Five) on May 4, 2026. *See* Mot., ECF No. 18. Defendants maintain that Cummings' allegations of late commission payments in her gender discrimination claim are time-barred. *See id.* at 9–10 (citing 42 U.S.C. § 2000e-5(e)(1)). Cummings filed a Response in Opposition on May 18, 2026. *See* Resp., ECF No. 19. Defendants filed a Reply on May 26, 2026. *See* Reply, ECF No. 20.

## III.    LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)). Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

**B. Discrimination under Title VII – Review of Applicable Law**

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448–49 (3d Cir. 2015). Disparate treatment claims brought under Title VII are analyzed using the three-step framework of *McDonnell Douglas Corp. v. Green.  See* 411 U.S. 792 (1973).  *See Rabinowitz v. AmeriGas Partners, L.P.*, 252 F. App'x 524, 527 (3d Cir. 2007). "Under the *McDonnell Douglas* paradigm, an employee must first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005). The Third Circuit Court of Appeals has "defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." *Fasold*, 409 F.3d at 184. "It is important to note that although the 'burden of production' may shift during the *McDonnell Douglas* inquiry, the 'ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee].'" *Id.* (citing *Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 759 n.3 (3d Cir. 2004)); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (explaining that once the plaintiff establishes a prima facie case, the law creates a "presumption" of unlawful discrimination, which is rebutted if the employer articulates a legitimate nondiscriminatory explanation for the employer's action, but

8
060926

the "presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the ultimate burden of persuasion").

To establish a prima facie case of employment discrimination, a plaintiff must show that:

(1) he is a member of a protected class;
(2) he was qualified for the position in question;
(3) he suffered an adverse employment action; and
(4) the adverse action occurred under circumstances giving rise to an inference of discrimination.

*McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). "The central focus in a discrimination case is "whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15. (1977)).

### C.  Hostile Work Environment under Title VII – Review of Applicable Law

To establish a hostile work environment claim, the plaintiff must show:

(1) he suffered intentional discrimination because of his national origin, race, or age;
(2) the discrimination was pervasive and regular;
(3) it detrimentally affected him;
(4) it would have detrimentally affected a reasonable person of the same protected class in his position; and
(5) there is a basis for vicarious liability.

*Massey*, 269 F.3d at 260; *Tate v. Main Line Hosps., Inc.*, No. 03-6081, 2005 U.S. Dist. LEXIS 1814, at *60-61 (E.D. Pa. Feb. 8, 2005). In deciding whether an environment is "hostile," the court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Title VII "does not reach the ordinary tribulations of the workplace, for example,

sporadic use of abusive language or generally boorish conduct." *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (internal quotations omitted). "'[O]ffhanded comments and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). A constructive discharge occurs when the employer made working conditions "so unpleasant or intolerable that a reasonable person in the employee's shoes would resign." *Rosh v. Gold Standard Café at Penn, Inc.*, No. 16-1676, 2016 WL 7375014, at *5 (E.D. Pa. Dec. 19, 2016) (internal quotation marks and citation omitted). The plaintiff does not need to show that the employer intended for him to resign, only that it "knowingly permitted the unpleasant or intolerable discrimination." *Id.*

### D. Retaliation under Title VII – Review of Applicable Law

To establish a prima facie case of retaliation under Title VII, the ADA, and/or the PHRA, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Boykins v. SEPTA*, No. 17-1980, 2018 WL 460652, at *2, *6 (3d Cir. 2018) (analyzing claims under Title VII and the PHRA the same).

Pursuant to the first element, a report to a superior may constitute protected activity where discrimination is specifically alleged in the verbal or written report. *See LeBlanc v. Hill Sch.*, No. 14-1675, 2015 WL 144135, at *14 (E.D. Pa. Jan. 12, 2015) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)); *see also Moore v. City of Phila.*, 461 F.3d 331,

341 (3d Cir. 2006) (stating that the employee must have a good faith, reasonable belief that the activity complained of is unlawful (citing *Clark Cnty v. Breeden*, 532 U.S. 268, 271 (2001))).

As to the second element, a plaintiff must show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. . . . The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Suders*, 542 U.S. at 141.

Under the third element, a plaintiff must show a causal connection between the protected activity and the retaliatory act. *See Moore,* 461 F.3d at 341–42. In determining causation, courts often look to the "temporal proximity between the protected activity and the alleged discrimination" and "the existence of a pattern of antagonism in the intervening period." *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (citing *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001)) (internal quotation marks omitted), *overruled on other grounds by Burlington Northern*, 548 U.S. 53. Since there is no single, definite way of showing causation, the court must look at the evidence "as a whole" to determine if retaliation has been sufficiently pled. *See Jensen*, 435 F3d at 450 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000)). However, "for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (explaining that "a prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a

complaint fails to state a claim" (internal quotations and citations omitted)). "Instead of requiring a prima facie case, the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted).

### E. Pennsylvania Human Relations Act – Review of Applicable Law

Title VII and the PHRA both "make it illegal for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment on the basis of sex." *Summy-Long v. Pa. State Univ.*, 226 F. Supp. 3d 371, 411 (M.D. Pa. 2016), *aff'd*, 715 F. App'x 179 (3d Cir. 2017) (citation omitted) "The two acts are substantially similar, and Pennsylvania courts generally interpret the PHRA consistent with Title VII." *Id.* "The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Summy-Long*, 226 F. Supp. 3d at 411 (citing *Weston v. Commw. of Pa*, 251 F.3d 420, 425 n. 3 (3d Cir. 2001)).

## IV.   ANALYSIS

### A. Discrimination and Hostile Work Environment under Title VII and the PHRA

The Court finds Cummings' allegations sufficient to state gender discrimination and hostile work environment claims under both Title VII and the PHRA. To the extent that Defendants argue that Cummings' commission allegations are time-barred, *see* Mot. 9–10, she alleges that Defendants owed her commissions incurred during the 300-day EEOC window. *See* ECF No. 17-3.

### B. Retaliation under Title VII and the PHRA

Cummings fails to plausibly plead retaliation. Although Cummings engaged in a protected activity by emailing her supervisors and management about her alleged discrimination,

*see* Am. Compl. ¶¶ 30, 32, she fails to allege any conduct that occurred after her October 4, 2023 email. All she alleges is that Defendants failed to either respond to her email or investigate her complaints until after she sent a second email on October 11, 2023, after which she resigned from Defendants' employ. *See id.* ¶¶ 31–34. Cummings thus does not state a retaliation claim. *See LeBlanc*, 2015 WL 144135, at *17 (finding that "an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint"); *see also Lustgarten v. Hunterdon Med. Ctr.,* No. 20-12695, 2020 WL 6707959, at *3 (D.N.J. Nov. 16, 2020) (dismissing a retaliation claim when "the Amended Complaint does not appear to allege any facts that Defendants took adverse employment actions after Plaintiff engaged in protected activity").

Since the Court gave Cummings an opportunity to amend her Complaint, granting further leave to amend her retaliation claims would be futile. *See In re Avandia Marketing, Sales Practices, and Prods. Liability Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) ("Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint.") (citing *Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000)).

## V.    CONCLUSION

Upon review of the Amended Complaint and the Motion to Dismiss, this Court finds that Cummings states a claim for gender discrimination and hostile work environment but fails to state a claim for retaliation. The Court denies the Motion to Dismiss Count One and the gender discrimination allegations in Count Three but grants the Motion as to Count Two and the retaliation allegations in Count Three. Count Two and the retaliation allegations in Count Three are dismissed with prejudice.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

060926